# Everson Borough.

*School law—Agreement between school districts—Decree of court—Apportionment of property and debt—Acts of April 11, 1862, P. L. 471, and June 24, 1895, P. L. 259.*

Where a borough is formed out of a portion of a township and a new school district thereby created, the two school districts may agree that in consideration of the new district having within its limits most of the property, all of the bonded indebtedness of the old district shall be assumed by the new district, and upon such an agreement being submitted to the court, a decree in accordance therewith will be entered without the necessity of hearing any testimony.

The Act of April 11, 1862, P. L. 471, has not been repealed or suspended by the Act of June 24, 1895, P. L. 259.

Argued April 16, 1906.   Appeal, No. 47, April T., 1906, by the School District of Upper Tyrone Township, from order of Q. S. Fayette Co., March T., 1903, No. 191, discharging rule to set aside decree in matter of the incorporation of Everson Borough.   Before RICE, P. J., PORTER, HENDERSON, MORRISON and HEAD, JJ.   Affirmed.

Rule to set aside decree.

UMBEL, J., stated the facts as follows :

December 7, 1903, a portion of Upper Tyrone township was incorporated into a borough under the name and style of the borough of Everson.

Before the incorporation of the borough the school district of Upper Tyrone township had incurred an indebtedness of several thousand dollars, a large portion of which was then unpaid, hence after the incorporation an adjustment of the indebtedness and the property rights between the two school districts became an imperative necessity, and it seems to have been conceded by all parties that an undue proportion of the school property of the township was within the borough limits, and as a legal consequence it should pay to the township the value of such undue proportion.

On or about January 28, 1904, an amicable adjustment was affected by an agreement between the two school boards, providing that the school district of the borough of Everson should assume and pay the balance of the bonded indebtedness of the said township, and that said assumption and payment should be a full and complete settlement for the undue proportion of school property within the borough limits ; and on January 28, 1904, aforesaid, proper resolutions were adopted by the school board of each of the said districts regarding the matter, setting forth therein and in preambles thereto the material facts, authorizing, directing and empowering the president and secretary of the respective boards to execute and deliver in the name of their respective districts such deed, deeds, acquittances or agreements as might be required to carry out the same.

Soon thereafter a petition, on behalf of the boards of directors of the two school districts embodying, inter alia, the facts aforesaid, was presented to the court, praying the "court to make a decree directing the school district of the borough of Everson to assume and pay the aforesaid bonded indebtedness yet remaining unpaid as the said bonds shall, from time to time, become due and payable, principal and interest, and that such assumption and payment shall be a settlement in full for the undue proportion of school property located within the limits of the said borough of Everson at the time of its incorporation and a settlement in full of all the rights accruing to either or

both of said districts by reason of the incorporation of the said borough."

Whereupon the court ordered and decreed as follows, viz: " Now, March 8, 1904, petition presented in open court and after consideration, in pursuance of agreement of said boards of directors, the court orders and decrees that the said school district of the borough of Everson assume and pay the bonded indebtedness in said petition mentioned as the said bonds shall from time to time become due and payable, principal and interest, and that such assumption and payment shall be full settlement for the undue proportion of school property within the borough of Everson at the time of its incorporation and a settlement of all the rights accruing to either or both of said districts by reason of said incorporation."

*Error assigned* was the order discharging the rule.

*James R. Cray*, with him *D. W. McDonald*, for appellant.

*H. S. Dumbauld*, of *Sterling, Higbee, Dumbauld & Brown*, for appellee.

OPINION BY RICE, P. J., May 14, 1906 :

By the incorporation of a portion of a township as a borough a new school district is formed within the meaning of the eleventh section of the Act of April 11, 1862, P. L. 471 : In re Abington School District, 84 Pa. 179. The section provides as follows : " When a new school district is formed, the court establishing the same shall determine, on hearing, whether an undue proportion of the real estate and schoolhouses, belonging to the old district or districts, are within the bounds of the new district, and if so, how much money shall be paid therefor by the new to the old district or districts, and if any money be on hand, or debt unpaid, or any tax, or other claims, be uncollected, after the settlement of all accounts of the current year, the proper court shall divide said money, or debt, among the districts, in such proportions, and shall make such order as to uncollected tax, or other claims, as shall be just."

The order in the present case was made upon the joint petition of the two school districts formed by the incorporation of

part of the township of Upper Tyrone as the borough of Everson. Eight months after it was made a rule was granted, upon the petition of the newly elected school board of Upper Tyrone, to show cause why it should not be set aside. An answer was filed by the school district of Everson denying the allegation of the petition affecting the qualifications and disinterestedness of three of the township directors who participated in the agreement upon which the order was founded, and the further allegation that the agreement was inequitable and injurious to the township school district. No testimony was taken in support of either of these allegations ; therefore in the disposition of this appeal from the order discharging the rule to show cause they will be left out of consideration.

1. The appellant's counsel question the original order upon the ground that imposing the bonded indebtedness of the former district upon the new district was not an authorized mode of adjustment. This might be true, if it had not been assented to by the two parties interested in the adjustment, and the only matter to be determined was, whether an undue proportion of the real estate and schoolhouses belonging to the old district were within the bounds of the new district. But in addition to the latter matter, the act provides that if any money be on hand or debt unpaid, the court shall divide said money, or debt, among the districts in such proportion, and shall make such order as to uncollected tax, or other claims as shall be just. We can conceive of conditions where a just and equitable apportionment of the rights and liabilities of the former district, as well as a proper adjustment of the compensation the new district ought to make for the undue proportion of the real estate and schoolhouse which are within its bounds, would both be attained by the simple imposition of the entire bonded indebtedness of the former district upon the new district, and where such method of adjustment would be advantageous to both districts. Where such conditions exist, and such method of adjustment is agreed to and prayed for by both districts, we see no reason to doubt the power of the court to adopt it.

2. But the point most strenuously insisted upon by the appellant's counsel is, that the court had no authority to make any final order or decree in the matter except " on hearing "

and that the record shows there was no such hearing in the present case as the statute contemplates. This argument is based on the assumption that a decree " on hearing " necessarily implies a decree based on testimony. But if in the present case the proceeding had been instituted by the petition of one of the districts and the other had appeared pursuant to citation or other legal process, it certainly cannot be successfully claimed that, although there was no dispute between them as to the facts, they must nevertheless go to the expense of establishing them by the depositions of witnesses, or by the production and examination of witnesses in open court. As in ordinary litigation, so here, the parties to it are entitled to a hearing upon the issues of law and fact involved in the proceeding, but no rule of procedure debars the court from taking cognizance of the facts agreed to by them (this is precisely what was done in Munhall Boro. School Dist. v. Mifflin Twp. School Dist., 207 Pa. 638), or from approving an adjustment of their affairs which the law permits, and which they agree is justified or required by the undisputed facts. Whatever may be the power of the court, upon the ground of fraud or other equitable consideration, to set aside an order, which the law permits and the two school districts have agreed to and prayed for, it is quite clear that such order cannot be declared void merely because at the hearing no evidence was produced by either party outside of their agreement. As to the validity of agreements between the school boards of the two districts we refer to our recent decision in Rouseville Boro School District v. Cornplanter Twp. School District, 29 Pa. Superior Ct. 214. The argument based on the supposed dangers incident to the sanctioning by the court of such an agreement as was made by these school boards might be made with equal force against the general legislative policy relative to the management of the affairs of school districts. It will be time enough to consider the effect of proof of fraud and collusion upon the validity of an order of court founded on such an agreement when a case arises where such proof is presented. No proof of that kind, nor any evidence that the adjustment agreed to was inequitable or unjust, was submitted to the court below; therefore the court was right in concluding, that as the order was not void for want of jurisdiction it ought not to be set aside.

3. The third question presented is, whether the act of 1862 was repealed or superseded by the Act of June 24, 1895, P. L. 259. The provisions of the latter act are much broader in their scope than the act of 1862. But as we view the case it is unnecessary to discuss them or the general subject of the repeal of the statute by implication. The concluding section expressly declares that "nothing in this act contained shall be construed to supersede or repeal the provisions of any existing act of assembly applicable to the same subject-matter." The act of 1862 is such an act.

The order is affirmed and appeal dismissed at the costs of the appellant.